**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

VONZELL JOHNSON,                              *

Plaintiff                                    *

v                                            *          Civil Action No. ELH-13-1494

WESTERN CUMBERLAND INSTITUTION   *
OFFICERS, et al.,
Defendants                                   *
                                         ***

**MEMORANDUM**

Vonzell Johnson, the self-represented plaintiff, is a Maryland prisoner currently incarcerated at Jessup Correctional Institution ("JCI").  He has filed suit against Correctional Officer II Marlin Randall, defendant, pursuant to 42 U.S.C. § 1983.  *See* ECF 3 (Amended Complaint).[1]

Defendant has moved to dismiss or, alternatively, for summary judgment.  ECF 22.  The motion is supported by numerous exhibits and a legal memorandum (collectively, the "Motion").  On January 28, 2014, a letter was sent to plaintiff, advising that the Motion could result in the dismissal of the case, and of his right to respond to the Motion.  ECF 23.  *See Roseboro v.*

---

[1] To the extent that plaintiff lodged a claim against "Western Cumberland Institution Officers," that claim shall be dismissed.  Essential to sustaining an action under § 1983 are the presence of two elements.  Specifically, the plaintiff must demonstrate that: (1) he suffered a deprivation of "rights, privileges or immunities secured by the Constitution and laws" of the United States; and (2) the act or omission causing the deprivation was committed by a person acting under color of law.  *West v. Atkins*, 487 U.S. 42, 48 (1988).  There is no legal entity named "Western Cumberland Institution Officers."  Because defendant "Western Cumberland Institution Officers" is not a "person" subject to suit or liability under § 1983, plaintiff's complaint against it must be dismissed.

*Garrison,* 528 F.2d 309, 310 (4th Cir. 1975).  In response,  plaintiff filed a motion for judgment. ECF 24.[2]

No hearing is necessary to resolve the Motion. *See* Local Rule 105.6 (D. Md. 2011).  For the reasons that follow, defendant's Motion, construed as a motion for summary judgment, shall be granted.

**Background**

Johnson alleges that on April 26, 2013, while he was incarcerated at the Western Correctional Institution ("WCI"), C.O. Randall came to his cell after a "'3:00 pm' count" and "shook down" his cell.  Plaintiff states Randall threw plaintiff's property around the cell and on the floor, including personal letters and pictures.  According to plaintiff, after his cell was searched he was taken to a holding cell, where Randall punched him in the face and ribs, stomped on his back, and kicked him in the ribs.  ECF 3.

Randall's version of events differs.  On April 22, 2013, Randall filed a request to restrict plaintiff's walks/exercise for three days due to plaintiff's verbal abuse of staff. Additionally, in contravention of regulations, plaintiff covered his cell window, cell light and/or door window, and refused to stand for count.  ECF 22-3, Ex. 1.  The request to restrict plaintiff's activity was approved on April 23, 2013, by Lt. Rodney Likin, the Unit Manager.  The restrictions were to be removed on April 25, 2013. *Id.*

On April 26, 2013, plaintiff used threatening language toward Correctional Officer N. Hetz during a search of plaintiff's cell.  ECF 22-4, Ex. 2.  During the search of the cell, plaintiff

---

[2] In the same month, March 2014, plaintiff filed correspondence *dated August 4, 2013,* advising that he was undergoing medical treatment as a result of the assault committed upon him by C.O. Randall.  ECF 25.  In the letter, he said that, "at the moment," he was "not prepared . . . to deal with the [prison's] litigation coordinator. . . ." *Id.*  The court has heard nothing further from plaintiff.

acted aggressively toward Hetz, stating: "I'm going to kill you when I slip these handcuffs you mother fucker." *Id*.  Hetz ordered plaintiff to stop but plaintiff continued the threats, stating: "You fuckin' bitch, let[']s go! I'm going to fuck you up." *Id*.  Due to plaintiff's assaultive behavior, Randall escorted plaintiff out of the cell and, at Lt. Likin's instructions, placed plaintiff on Staff Alert status.  ECF 22-4, Ex. 2; ECF 22-6, Ex. 4, ECF 22-7, Ex. 5.

As a result of plaintiff's conduct, on April 26, 2013, he received a Notice Of Inmate Rule Violation.  ECF 22-4 at 2, Ex. 2.  He also received a Notice Of Inmate Disciplinary Hearing, *id.* at 1, which included an advisement of plaintiff's rights in connection with the charges.  *Id*. However, plaintiff refused to sign for receipt of the rule violation report or the notice as to the disciplinary hearing.  *Id*.

An adjustment hearing was held on May 10, 2013.   The Hearing Officer, John Sandstrom, was presented with plaintiff's version of events, ECF 22-4 at 6, in which plaintiff claimed that he "did nothing," was placed in a holding cell following the cell search for no reason, and was then assaulted by Randall.  *Id.*  The Hearing Officer found plaintiff's version of events, "not credible."  *Id.*  The Hearing Officer noted there was no evidence corroborating plaintiff's version of events.  *Id.*  In contrast, the Hearing Officer found Hetz's report credible. *Id*.  Plaintiff was found guilty of the rule infraction, and was sanctioned with 180 days of disciplinary segregation and revocation of 120 days of good conduct credits.  *Id.*  Plaintiff appealed, and articulated his grounds.  ECF 22-4 at 8.  The Warden at JCI affirmed the Hearing Officer's decision as well as the sanctions.  ECF 22-4 at 10.

Randall denies that he assaulted or harassed plaintiff.  He states that on April 26, 2013, he escorted plaintiff from his cell in #4-C-30 to #4-B-1 after plaintiff threatened Officer Hetz during a cell search.  Randall avers that he placed plaintiff in #4-B-1 at the direction of Lt. Likin in an

effort to avoid further aggression by plaintiff. Randall also alleges that the escort was without incident, no force was used against plaintiff, and plaintiff did not sustain any injuries as a result of the escort. ECF 22-8, Ex. 6, Declaration of Marlin Randall.

Sgt. Steven Beeman, the Administrative Remedy Procedure ("ARP") officer at WCI, avers in his Declaration that he has researched serious incident reports and use of force logs at WCI and found no reports involving plaintiff on April 26, 2013. ECF 22-9, Ex. 7. Nor did he locate such reports for any dates in close proximity to April 26, 2013. *Id.*

On April 30, 2013, plaintiff filed an ARP as to the alleged assault. ECF 22-11 at 33. He reported that Randall hit him in the right rib area and face, stomped on his back, and kicked him in the ribs. *Id.* Given plaintiff's allegations, the matter was referred to the Internal Investigation Unit ("IIU") for review. ECF 22-11, Ex. 9. Plaintiff's allegations were thoroughly investigated by IIU, which included an interview of Johnson, ECF 22-11 at 9, and photographs of him taken on April 29, 2013. ECF 22-11 at 12, 64-65. No evidence was uncovered in support of plaintiff's claims. The case was closed with no further action taken by IIU. ECF 22-11 at 14.

Plaintiff's medical records reflect that on May 2, 2013, plaintiff was seen by Dennis Martin, R.N. for a wellness check after he reported to staff that he was assaulted by Randall on April 26, 2012. ECF 22-10 at 2, Ex. 8, ECF 22-12 at 35, Ex. 10. No injuries were reported by plaintiff or noted by Martin. *Id.* The medical notation indicates that plaintiff was not in distress.

On May 7, 2013, plaintiff was again seen by Dennis Martin, RN. He requested a bottom bunk "due to rib discomfort" attributed to the assault. ECF 22-12 at 33, Ex. 10. Nurse Martin examined plaintiff and recommended range of motion exercises. He also advised plaintiff that Motrin and muscle rub were available from the commissary. *Id.*

Plaintiff was transferred to JCI on May 21, 2013, and seen for complaints of pain in his ribs due to the alleged assault at WCI. ECF 22-12 at 25. He was provided a warm compress and instructed to return in 10 days if there was no improvement. *Id.* He continued to complain of pain in his ribs through June 2013, and also complained of periods of dizziness, blackouts, vomiting, nausea and headaches through June, July, and August, 2013. His medical examinations, however, remained unremarkable, with no objective findings of injury. *See generally*, ECF 22-12. Nevertheless, on September 17, 2013, plaintiff underwent a CT scan. The results were normal, with no signs of mass, swelling, hemorrhage, infarctions, or fluid collections. ECF 22-12 at 2-3.

## Standard of Review

Defendant's motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. ECF No. 19. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

A court may not convert a motion to dismiss to one for summary judgment *sua sponte*, unless it gives notice to the parties that it will do so. *See Laughlin v. Metro. Wash. Airports*

*Auth.*, 149 F.3d 253, 261 (4th Cir. 1998) (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials.").  However, when the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin*, 149 F.3d at 261.

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it."  5C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id.* at 149.  In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.* at 165-67.

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. de Nemours and Co. v. Kolon Indus., Inc.,* 637 F.3d 435, 448-49 (4th Cir. 2011).  However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an

attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)).   To raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)).[3]

If a non-moving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'"   *Harrods,* 302 F.3d at 244 (citations omitted).   But, the non-moving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature. Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit.   *Id.* (internal citations omitted).   According to the

---

[3] "'Rule 56(d) affidavits cannot simply demand discovery for the sake of discovery.'" *Hamilton v. Mayor & City Council of Baltimore*, 807 F. Supp. 2d 331, 342 (D. Md. 2011) (quoting *Young v. UPS*, No. DKC-08-2586, 2011 WL 665321, at *20, 2011 U.S. Dist. LEXIS 14266, at *62 (D. Md. Feb. 14, 2011)).   "Rather, to justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted).   A non-moving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir.), *cert. denied*, 555 U.S. 885 (2008).

Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Id.* at 244-45 (internal citations omitted).

Plaintiff has not filed an affidavit under Rule 56(d). Moreover, I am satisfied that it is appropriate to address defendant's motion as one for summary judgment, because this will facilitate disposition of the case.

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* at 248. There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)).

But, the court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002).

Because plaintiff is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nevertheless, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corporation*, 477 U.S. at 323–24).

### Discussion

A.  Excessive Force

To proceed under 42 U.S.C. § 1983, a plaintiff must allege a violation of a federal constitutional right or a right secured by federal law. *Baker v. McCollan*, 443 U.S. 137, 140 (1979). To state a claim under § 1983, a plaintiff must: 1) "allege the violation of a right secured by the Constitution and laws of the United States"; and 2) "show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir.), *cert. denied*, ____ U.S. ____, 132 S. Ct. 112 (2011).

A convicted inmate's claim of use of excessive physical force is examined in the context of the Eighth Amendment's prohibition against cruel and unusual punishment. *See Whitley v. Albers*, 475 U.S. 312, 391-21 (1986); *see also Wilkins v. Gaddy*, 559 U.S. 34 (2010) (per curiam); *Hudson v. McMillan*, 503 U.S. 1, 7-9 (1992). The use of force by a prison officer violates an inmate's Eighth Amendment rights when such force is "inconsistent with

contemporary standards of decency," *Estelle v. Gamble*, 429 U.S. 97, 103 (1976), or is "'repugnant to the consciousness of mankind.'" *Wilkins*, 559 U.S. at 38 (citations omitted).  The Eighth Amendment inquiry focuses on whether the "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U. S. at 7.

Multiple factors are relevant to the inquiry.  They include the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. *See Whitley*, 475 U. S. at 321.

The Supreme Court has made clear that "not 'every malevolent touch by a prison guard gives rise to a federal cause of action'" under the Eighth Amendment. *Wilkins*, 559 U.S. at 37 (citations omitted).  Conversely, the absence of "significant" injury is not dispositive of a claim of excessive force. *See Wilkins*, 559 U.S. at 36-37.  But, the extent of an inmate's injury is one factor indicative of whether the force used was necessary in a particular situation.  Moreover, if force is applied maliciously and sadistically, liability is not avoided "merely because [the plaintiff] had the good fortune to escape without serious injury." *Id*. at 37.  Put another way, there is no "de minimis" level of injury that is an acceptable result of excessive force under the Eighth Amendment. *Id.* at 38-40.

Defendant denies that plaintiff was assaulted as alleged in the complaint.  According to Randall, the assault simply never occurred.  The IIU conducted a thorough investigation and uncovered no evidence of an assault on plaintiff by Randall.  Moreover, at the adjustment proceeding arising from plaintiff's assaultive conduct, the Hearing Officer found plaintiff's

allegation that Randall assaulted him not credible.  Notably, plaintiff made no complaint of injury until a week after the alleged assault and, despite his repeated subjective complaints of injury, no objective evidence of an injury was ever noted, despite multiple medical examinations.

Simply stated, there is no objective evidence to support plaintiff's version of events. Plaintiff, the non-moving party, must establish the existence of a genuine issue of material fact by presenting evidence on which a fact-finder could reasonably find in his favor.  Plaintiff has failed to submit any evidence to support his claim, or to put the material fact of this case--the use of force against plaintiff--in dispute.  *See generally Gray v. Spillman*, 925 F.2d 90 (4th Cir. 1991).

Although the non-moving party may rely upon a verified complaint when allegations therein are based on personal knowledge, *see Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991), plaintiff's complaint is not verified.  His motion for judgment on the pleadings (ECF 24), filed in response to the defendants' dispositive motion, merely repeats his bald allegations of assault and raises new claims, which are not properly before the court, that the assault was racially motivated and that he was left in the holding cell without his clothes and with a known gang member.

To be sure, on summary judgment the court may not determine the parties' credibility. *Spillman*, 925 F.2d at 95.  But, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for the purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).  Plaintiff offers no evidence to refute Randall's affidavit or the voluminous evidence filed in support of the Motion.  In light of the foregoing, Randall is entitled to summary judgment.

B.  Disciplinary Proceeding

To the extent that plaintiff claims he was denied due process during the disciplinary proceedings arising from the incident, his claim fails.  With respect to disciplinary proceedings which bring the possible loss of good conduct credits, a prisoner is entitled to certain due process protections.  *See Wolff v. McDonnell*, 418 U.S. 539, 564 (1974).  As the Supreme Court explained in *Wolff*, although prisoners "may not be deprived of life, liberty, or property without due process of law," their due process rights remain "subject to restrictions imposed by the nature of the regime to which they have been lawfully committed."  *Id.*  Accordingly, "there must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application."  *Id.*

Applying those principles, the Supreme Court held in *Wolff* that a prisoner facing a disciplinary hearing is entitled to: (1) written notice of the charges, at least 24 hours before the disciplinary hearing; (2) an opportunity "to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals"; and (3) a "written statement by the factfinders as to the evidence relied on and reasons for the disciplinary action" imposed.  *Id.* at 564-66 (quotation marks and citation omitted).  Nevertheless, inmates are not entitled to a right of confrontation, nor are they guaranteed a right to counsel.  *Id.* at 567-70;[4] *see Baxter v. Palmigiano*, 425 U.S. 308, 322-23 (1976); *Brown v. Braxton*, 373 F.3d 501, 505-06 (4th Cir. 2004).  Substantive due process is

---

[4] Specifically, the Court concluded in *Wolff* that rights to confrontation or cross-examination present "greater hazards to institutional interests," and thus declined to require those rights in connection with prison disciplinary proceedings.  418 U.S. at 567-68.  The Court also refused to recognize a general right to counsel at such proceedings, allowing only illiterate inmates or those facing particularly issues to consult with a sufficiently competent inmate or staff member.  *See id.* at 569-70.

satisfied if the disciplinary hearing decision was based upon "some evidence." *Superintendent, Mass. Correctional Institution v. Hill*, 472 U.S. 445, 455 (1985).

Plaintiff received all the process he was due.  He was given timely advance written notice of the infraction and was permitted to attend the disciplinary hearing and to call witnesses on his own behalf.  Moreover, the Hearing Officer's determination of guilt was based upon some evidence, *i.e.*, review of plaintiff's statement, staff testimony, and the written record, upon which the Hearing Officer based determinations as to credibility.  Plaintiff also received a written decision after the hearing, which included a statement of the evidence upon which the Hearing Officer relied and the reasons for the decision.  ECF 22-4, Ex. 2.  As noted, the Warden reviewed and upheld the Hearing Officer's decision.  *Id*.

C.  Legal Mail

Plaintiff claims that during the search of his cell legal work was destroyed and that he has concerns as to whether his outgoing mail is being mailed out of the institution.  These claims provide no basis for relief.

Prisoner claims regarding legal mail are typically analyzed as access to court claims.  To state a constitutional claim for denial of access to the courts, a prisoner must show that the alleged shortcomings "hindered his efforts to pursue a legal claim."  *Lewis v. Casey*, 518 U.S. 343, 351 (1996).  Prisoners are entitled to "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts."  *Bounds v. Smith*, 430 U.S. 817, 825 (1977); *Hudspeth v. Figgins*, 584 F.2d 1347 (4th Cir. 1978).  In *Lewis v. Casey*, 518 U.S. at 349, the Supreme Court clarified the *Bounds* decision by finding that a deprivation of a prisoner's right of access to the courts is actionable, but only where the prisoner is able to demonstrate actual injury from such deprivation.  The actual injury requirement, however, is not satisfied by

just any type of frustrated legal claim.   *Id*. at 354.   Rather, the *Lewis* Court concluded that *Bounds v. Smith*, stood essentially for the proposition that prisoners are not guaranteed the ability to litigate every imaginable claim they can perceive.   Rather, they are entitled to the tools necessary "in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement."   *Id*. at 354.

Plaintiff has advised of no actual injury or specific harm which he has suffered as a result of his allegations concerning destruction of legal paperwork and/or concerns about his outgoing mail.  Because plaintiff offers no evidence of injury, his claim fails.[5]

Conclusion

Given the foregoing, plaintiff's complaint against "Western Cumberland Institution Officers" shall be dismissed, defendant Randall's motion for summary judgment will be granted, and plaintiff's motion for judgment on the pleadings shall be denied.   A separate Order follows.

June 12, 2014
Date

/s/
Ellen L. Hollander
United States District Judge

---

[5] The court does not construe plaintiff's Complaint as alleging a claim regarding the Administrative Remedy Process.   Therefore, I need not resolve defendant's contention that plaintiff failed to exhaust administrative remedies.  See ECF 22-15, Ex. 12, Declaration of Scott Oakley, Executive Director of the State's Inmate Grievance Office.